[Cite as *State v. Webb*, 2014-Ohio-2644.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100487

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GLENN WEBB

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571827

**BEFORE:** S. Gallagher, P.J., E.A. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 19, 2014

**ATTORNEYS FOR APPELLANT**

Joseph C. Patituce
Catherine R. Meehan
Patituce & Associates, L.L.C.
26777 Lorain Road
Suite 708
North Olmsted, Ohio   44070


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Christopher D. Schroeder
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Appellant Glenn Webb appeals his conviction for theft in office. For the reasons stated herein, we affirm the judgment of the trial court.

{¶2} On March 1, 2013, appellant was indicted for one count of theft in office, in violation of R.C. 2921.41(A)(1), a fourth-degree felony, and four counts of tampering with records, in violation of R.C. 2913.42(A)(1).

{¶3} At trial, Ronald Tabor, criminal division administrator for the Cleveland Municipal Court clerk's office, testified that in response to a meeting with the deputy chief from the court bailiff's office, he examined a case file that was found to have inconsistencies between what was on the journal entry and what was journalized in the court's computer. After listening to the audio recording regarding the case, he discovered that the journalized information did not reflect the fine and costs that were actually imposed. Rather, the journal entry was changed to show credit for time served and that the sentence was satisfied. Tabor testified to a number of other cases in which docket entries were changed to remove a fine that was issued with no money being collected by the Cleveland Municipal Court. The docket entries were made by the court journalizer who was assigned to Courtroom 3-C, Aisha Muhammad.

{¶4} Det. Todd Davis of the Intelligence Unit of the Cleveland Police Department testified to his investigation in the matter. He reviewed approximately 200 random Cleveland Municipal Court traffic case files. He found 40 of those files to have discrepancies. Det. Davis met with some of the individuals whose files appeared to have

been tampered with and took their statements. He also prepared photo arrays that were shown to a few of these individuals by a "blind administrator." None of the individuals who were shown the photographs identified anyone other than appellant, who had been the bailiff assigned to Courtroom 3-C, as the person who took their money.

{¶5} Aisha Muhammad, appellant's codefendant, testified that she and appellant had cooperated in stealing money from the Cleveland Municipal Court. She testified that appellant would hand her a file jacket that would have the judgment entry and amount of the fine scratched out and "DWP" circled for dismissed for want of prosecution. The scratched-out file was a signal for Muhammad to journalize the case as dismissed for want of prosecution and close the case or, in at least one case, to reflect "credit for time served, sentence suspended." Muhammad would issue a printout showing the case was dismissed, and then appellant would get the money from the person who was fined and return to Muhammad with her split of the money. Muhammad testified she and appellant did this about 20 times, with most instances resulting in a split of $100 or $200 each. She further testified the total amount stolen was more than $500. Muhammad stated she never did this with any other bailiffs. She pleaded guilty to one count of tampering with records, a felony of the fifth degree, and received one year of community control.

{¶6} The two other bailiffs who were assigned to Courtroom 3-C every day were females. Both testified that other bailiffs would rotate into the courtroom on a daily basis. Neither had seen any bailiff accept money from a person who was to pay a fine.

{¶7} The state called six witnesses who testified to paying money to a male bailiff who had approached them while they were waiting to pay a fine in the Cleveland Municipal Court. Three of these witnesses identified appellant from a photo array. All six witnesses had appeared in Courtroom 3-C and testified that they gave their money to a male. Appellant was the only male bailiff permanently assigned to that courtroom and was working in that courtroom on each of the days these witnesses appeared in court.

{¶8} The defense provided testimony from a witness who appeared in Cleveland Municipal Court for a loud music ticket who claimed he was approached by a female, gave her money for his ticket and was provided a receipt, and never dealt with a male bailiff. The defense also provided testimony from a female deputy bailiff who worked in Courtroom 3-C. Additionally, testimony was provided that handwriting samples were sent to the Ohio Bureau of Criminal Investigation for analysis, but there was not enough information that was altered on the files, which involved circled-out markings and scratch marks, to make a comparison.

{¶9} The trial court denied appellant's Crim.R. 29 motions. Appellant was found guilty as charged of theft in office and not guilty of the remaining charges. The trial court sentenced appellant to three years of probation, imposed a fine of $5,000, and ordered appellant to pay restitution.

{¶10} Appellant timely filed this appeal. He raises four assignments of error for our review. Under his first assignment of error, appellant claims he received ineffective assistance of counsel.

{¶11} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶12} Appellant claims his trial counsel was ineffective for withdrawing a motion to suppress evidence of the identifications made from the photo arrays. He asserts that the photo arrays were unduly suggestive. He claims that in one of the photo arrays, appellant was the only individual smiling and was the only individual wearing glasses despite the witness's testimony that he told the detective the person who took his money wore glasses. Appellant also claims this photo array was not shown using a blind administrator. He argues that in the two other photo arrays shown, appellant was one of three individuals wearing glasses despite the witnesses' description of the person they gave their money to as wearing glasses. Appellant also complains he was the only court employee shown in any of the photo arrays. Appellant further argues that the photo

arrays were not reliable despite their suggestive character because they were remote in time and the descriptions provided did not match the actual description of appellant.

{¶13} The failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. In order to establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must establish that there was a basis to suppress the evidence. *Id.*

{¶14} In reviewing the admissibility of challenged identification testimony, we must determine (1) whether the defendant has shown that the identification procedure used was unduly suggestive; and if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Campbell*, 8th Dist. Cuyahoga No. 99807, 2014-Ohio-493, ¶ 21.

{¶15} In this case, three of the witnesses were presented photo arrays from which they identified appellant as the individual to whom they gave their money. Appellant's complaint centers on the fact that appellant was smiling and wearing glasses in the photo. It has been recognized that certain features, such as a hairstyle or baldness, are features that can easily be changed and that a photo array need not contain individuals of nearly identical appearance. *State v. Sullivan*, 10th Dist. Franklin No. 10AP-997, 2011-Ohio-6384, ¶ 50. Even more readily changed is a smile or the wearing of glasses.

{¶16} Our review of the photo arrays reflects no significant variations in physical characteristics of the individuals shown. Each of the photo arrays include men of

relatively similar age, race, build, skin tone, facial hair, and photo background. We find nothing unduly suggestive about the photo arrays. Although appellant also complains that the witnesses provided descriptions that were not entirely accurate descriptions of appellant, the differing accounts of features such as height, age, and weight are matters of perception. Moreover, because the pretrial procedures were not unnecessarily suggestive, any remaining questions as to the reliability of the identifications go to the weight of the evidence, not to its admissibility. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 17; *State v. Wills*, 120 Ohio App.3d 320, 325, 697 N.E.2d 1072 (8th Dist.1997).

**{¶17}** Appellant also claims that one of the witnesses provided testimony that Det. Davis was the one to show him the photo array. However, Det. Davis testified that the photo array was shown to the witness using Det. Jody Remington as a blind administrator. Consistent therewith, state's exhibit No. 1 contains Det. Remington's signature as the person who administered the lineup.

**{¶18}** Finally, appellant states that his trial counsel failed to properly cross-examine a witness regarding his identification testimony. The witness testified that he saw the person who took his money on several occasions at the courthouse, despite the fact that appellant had been suspended from the Cleveland Municipal Court at the time. However, this testimony was elicited on cross-examination, and the witness testified that on these occasions he saw appellant in the clerk's office and on the first floor and that appellant was not wearing his blue bailiff's shirt. On redirect examination, the witness

again stated that he had not seen appellant wearing a bailiff's uniform during his recent sightings at the courthouse. It is entirely plausible that appellant could have been at the courthouse in a nonworking capacity.

{¶19} We are unable to find that counsel's performance was deficient. Finding no ineffective assistance of counsel, appellant's first assignment of error is overruled.

{¶20} Under his second assignment of error, appellant claims the state was improperly permitted to impeach its own witness. Appellant argues the trial court allowed the state to read a witness his prior statement made to Det. Davis outside the presence of the jury under the guise of refreshing the witness's recollection. Appellant asserts the state used the statement to impeach the witness's testimony that he had given his money to a female.

{¶21} The record reflects that the witness testified that he appeared in the Cleveland Municipal Court to pay a ticket in June 2010. After appearing before the judge, he was waiting to pay the ticket. He testified that he was called to the back by a lady who asked him how much money he brought and that he provided her with money and asked for a receipt. The witness was unable to recall the amount of money he paid. The witness was then shown a statement he made to Det. Davis, but indicated he could not read it without his glasses. The court permitted defense counsel to read the statement to the witness outside the presence of the jury, with the premise of using the writing to refresh the witness's recollection.

{¶22} A review of the record reflects that the witness was questioned outside the presence of the jury. After authenticating the prior statement the witness made to Det. Davis, the witness indicated he did not recall how much money he stated was given to the court employee. Because the witness could not read the statement, the state read a portion of the statement where the witness indicated he was approached by a female who asked if he brought money and the witness told her he brought $200. Upon refreshing his memory, the witness testified that $200 was in fact the amount he gave the employee. The state then asked the witness if he recalled telling the detective that the woman walked away and that he was approached by someone else. The witness responded that there were two people involved, one male and one female. After the witness indicated he could not recall what he told the detective about the male's involvement, the state read a portion of the statement where the witness indicated that he gave the $200 to an African American male bailiff and asked the bailiff for a receipt and that the bailiff indicated it was "for the lady." The witness then testified that he may have "twisted" what occurred and that he knew he was approached by both the female employee and the male employee. Upon having his memory refreshed, the witness indicated he was waved back by the female, had a conversation with her about money, and he remembered actually giving the male the money and asking for a receipt.

{¶23} Upon resuming testimony before the jury, the witness testified that after appearing before the judge, he was told by a bailiff to stand by a wall; that he was waved back by a lady and had a conversation with her about how much money he had; and that

after she walked off, he was approached by a male bailiff who asked for the money; and that he gave the male bailiff $200.

**{¶24}** The admission of evidence is within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Furthermore, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Evid.R. 103.

**{¶25}** A party may refresh the recollection of a witness under Evid.R. 612 by showing him his prior statement while testifying. Under the doctrine of present recollection refreshed, the witness looks at the prior statement to refresh his memory of the events, but then proceeds to testify from his present, independent knowledge. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 57, citing *State v. Scott*, 31 Ohio St.2d 1, 5-6, 285 N.E.2d 344 (1972). The testimony of the witness whose memory has been refreshed is the evidence and the content of the statement is not placed before the jury. *Powell* at ¶ 57.

**{¶26}** Here, the witness was unable to remember the amount of money he provided and the trial court permitted the statement he made to Det. Davis to be used to refresh his recollection outside the presence of the jury. The witness also testified to a female and a male being involved, but was unable to recall what he told the detective concerning the male's involvement. The witness's statement was used to refresh his memory. Upon resuming testimony before the jury, the witness testified from his present memory, which had been refreshed.

**{¶27}** Our review reflects that the witness's statement was used to refresh his recollection pursuant to Evid.R. 612, rather than to impeach the witness with a prior inconsistent statement. Further, even if the testimony did not fall squarely under Evid.R. 612, we are unable to conclude a substantial right of the accused was affected by the admission of the testimony. Indeed, there was other evidence presented establishing that both a male court employee and a female court employee were involved. Aisha Muhammad testified to her arrangement with appellant. Three witnesses identified appellant from a photo array and two other witnesses also testified to giving their money to a male bailiff. Accordingly, appellant's second assignment of error is overruled.

**{¶28}** Under his third assignment of error, appellant claims his conviction is not supported by legally sufficient evidence.

**{¶29}** A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶30}** Appellant claims there was insufficient evidence to show the value of the property stolen was greater than $500. Our review reflects that Aisha Muhammad testified that she and appellant took money "about twenty times," that each time she took

"a couple of hundred dollars," and that the total amount stolen was more than $500. The six witnesses who gave their money to appellant testified to the amounts or estimated amounts paid, which in the aggregate was greater than $500. Additionally, records from the electronic dockets involving these witnesses reflected that the amount of uncollected fines and the value stolen from Cleveland Municipal Court was greater than $500. Upon this evidence, we find any rational trier of fact could have found beyond a reasonable doubt that the value of property stolen was greater than $500. Appellant's third assignment of error is overruled.

{¶31} Under his fourth assignment of error, appellant claims his conviction was against the manifest weight of the evidence.

{¶32} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, at 387. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*. A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

**{¶33}** Appellant claims the evidence in this case shows a mistaken identity. He asserts that the witnesses provided varying descriptions of the individual involved and none actually described appellant, that one of the state's witnesses changed his testimony after indicating he gave his money to a female, and that another witness claimed he saw the individual who took his money at the courthouse on multiple occasions when appellant was on suspension.

**{¶34}** Our review reflects that although varying descriptions were provided by the witnesses, each witness testified to giving money to a male bailiff and three of the witnesses identified appellant from a photo array. Testimony was provided that appellant was the only male bailiff permanently assigned to Courtroom 3-C, and records from the Cleveland Municipal Court established that appellant was working in that courtroom on the dates that each of the six witnesses appeared in court. Consistent with these witnesses' accounts, Aisha Muhammad testified that appellant would approach people waiting to pay their fine and take their money. She further testified that appellant would provide her with an altered file for journalization and that she and appellant split the money provided.

**{¶35}** The state presented evidence to establish beyond a reasonable doubt that appellant, while being a public official, used his office in aid of committing a theft offense and the amount stolen was over $500 and less than $5,000. The jury, as trier of fact, heard the testimony and was in the best position to weigh the evidence and assess the witnesses' credibility. After examining the entire record, we cannot say that the jury lost

its way or created a manifest miscarriage of justice in convicting appellant of theft in office, a felony of the fourth degree. Appellant's fourth assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR